UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STEPHEN S. JACQUETT,                      No. C-14-0316 EMC (pr)

          Petitioner,

     v.                                        **ORDER OF DISMISSAL**

KEVIN CHAPPELL, Warden,

          Respondent.
_____/

## I.    <u>INTRODUCTION</u>

      Stephen S. Jacquett filed this *pro se* action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge a parole denial. Respondent has moved to dismiss the petition as untimely. Mr. Jacquett has filed an opposition to the motion. For the reasons discussed below, Respondent's motion will be granted and the petition will be dismissed.

## II.    <u>BACKGROUND</u>

      Mr. Jacquett was convicted in San Diego County Superior Court of first degree murder with the use of a firearm in the commission of the offense. In 1974, he was sentenced to life with the possibility of parole.

      At a parole suitability hearing on May 28, 2009, the Board of Parole Hearings ("BPH") found him suitable for parole. Governor Schwarzenegger exercised his authority under California Penal Code § 3041.2, reversed the decision of the BPH, and denied parole in a letter to Mr. Jacquett dated October 23, 2009. *See* Docket # 1-7 (Petitioner's Ex. G).

1 Mr. Jacquett hired an attorney to prepare a writ of habeas corpus to challenge the Governor's
2 decision. He initially contacted attorney William G. Prahl in "late November 2009" and a
3 "tent[a]tive agreement was reached to procure his legal services," although no contract was signed.
4 Docket # 8 at 9. Attorney Prahl met with him in December 2009 and provided a written contract,
5 which Mr. Jacquett returned to the attorney by mail on an unstated date. *Id.* On or after February
6 12, 2010, attorney Prahl's "asking fee was paid in full and [he was] therefore contracted to
7 Petitioner" to prepare and submit a habeas petition. *Id.*; *see also* Docket # 9 at 5 (money order dated
8 February 12, 2010). Mr. Jacquett met with attorney Prahl on March 12, 2010, and gave him the
9 "pertinent legal materials and research." Docket # 8 at 10. After about 60 and 120 days, Mr.
10 Jacquett wrote letters to attorney Prahl because he had not received any communications from
11 attorney Prahl about the progress of the matter. *See* Docket # 8 at 10. Attorney Prahl did not
12 respond. Petitioner's wife, Mrs. Jacquett also repeatedly attempted to call attorney Prahl, but was
13 only able to leave messages on his voice mail. Attorney Prahl did not respond to her messages. On
14 July 13, 2011, Mrs. Jacquett sent a letter to attorney Prahl demanding a refund of the fees paid him
15 and a return of the legal files. *See* Docket # 9 at 3. She mentioned that they had "entered into this
16 contract for your services in March 2010." *Id.* She also noted the time problems: "As an attorney,
17 you are well aware that writs must be filed in a timely fashion and some time constraints have
18 already expired." *Id.* Mrs. Jacquett wrote another letter to attorney Prahl on July 23, 2011, in which
19 she (a) noted that attorney Prahl had left a telephone message for her on July 18, 2011 stating that he
20 wanted to "'make things right'" with the Jacquetts, (b) terminated his services, and (c) requested that
21 he immediately return the files and the fee paid. *Id.* at 7. In a letter to attorney Prahl dated August
22 9, 2011, Mrs. Jacquett thanked him "for promptly sending Stephen's files." *Id.* at 8. Mrs. Jacquett
23 sent the files to Mr. Jacquett sometime "in late August or September 2011." Docket # 8 at 11.

24 Mr. Jacquett was separated from his legal files when he was put in administrative segregation
25 on November 21, 2011. Docket # 9 at 12. Mrs. Jacquett contacted prison officials several times to
26 find the files that apparently had been lost when his housing was changed. *See* Docket # 9 at 12-16.
27 Mr. Jacquett received his legal files back from prison officials on or about May 1, 2012. *See* Docket
28 # 8 at 11.

Mr. Jacquett filed several unsuccessful state court challenges to the Governor's decision. State Petition # 1 was a petition for writ of habeas corpus filed in the San Diego County Superior Court on June 12, 2012, and denied on July 20, 2012. *See In re. Stephen Jacquett*, San Diego County Superior Court Case Nos. HC 17976 & CR 32494. State Petition # 2 was a petition for writ of habeas corpus filed in the California Court of Appeal on August 28, 2012, and denied on October 2, 2012. *See In re Stephen Jacquett on Habeas Corpus*, Cal. Ct. App. Case No. D062548. State Petition # 3 was a petition for writ of mandate/prohibition filed in the California Supreme Court on November 6, 2012, then transferred to the California Court of Appeal, where it was denied on January 15, 2013. *See Jacquett v. Cal. Dept. of Corr. and Rehab.*, Cal. S. Ct. Case No. S206482; *Jacquett v. Cal. Dept. of Corr. and Rehab.,* Cal. Ct. App. Case No. D063046. State Petition # 4 was a petition for review filed in the California Supreme Court on January 24, 2013, and denied on March 4, 2013. *See Jacquett v. Cal. Dept. of Corr. and Rehab.*, Cal. S. Ct. Case No. S208219. State Petition # 5 was a petition for writ of habeas corpus filed in the California Supreme Court on July 24, 2013, and denied on October 16, 2013. *See Jacquett (Stephen S.) on H.C.,* Cal. S. Ct. Case No. S212304.

Mr. Jacquett then filed his federal petition for writ of habeas corpus. The federal petition for writ of habeas corpus has a proof of service showing it was mailed to the U.S. District Court on January 16, 2014. The petition was stamped "filed" at the Court on January 22, 2014. The federal petition was deemed filed as of January 16, 2014 because Mr. Jacquett receives the benefit of the prisoner mailbox rule, which deems most documents filed when the prisoner gives them to prison officials to mail to the court. *See Stillman v. LaMarque*, 319 F.3d 1199, 1201 (9th Cir. 2003).

### III. DISCUSSION

A. <u>The Limitations Period Began On October 24, 2009</u>

There is a one-year statute of limitations that applies to all habeas petitions filed by persons in "custody pursuant to the judgment of a State court," even if the petition challenges an administrative decision rather than a state court judgment. *Shelby v. Bartlett*, 391 F.3d 1061, 1063 (9th Cir. 2004) (quoting 28 U.S.C. § 2244(d)(1)). The statute of limitations has several alternative starting dates for the one-year period. For prisoners challenging administrative decisions such as the

denial of parole, section 2244(d)(1)(D) applies. *See id.* at 1066. Under section 2244(d)(1)(D), the one-year limitation period starts on the date upon which "the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." The time begins "when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance." *Hasan v. Galaza*, 254 F.3d 1150, 1154 n.3 (9th Cir. 2001); *see Redd v. McGrath*, 343 F.3d 1077, 1079 (9th Cir. 2003) (limitations period began to run when the Board denied prisoner's administrative appeal challenging denial of parole).

Mr. Jacquett's one-year limitations period began when the Governor denied parole on October 23, 2009. Although the Governor's decision is dated October 13, 2009, the letter conveying that decision was dated October 23, 2009 and faxed to Mr. Jacquett. Therefore, Mr. Jacquett knew or through diligence could have discovered the important facts on October 23, 2009, and the limitations period began the following day. *See Shelby*, 391 F.3d at 1066. The presumptive deadline for Mr. Jacquett to file his federal petition was October 23, 2010. He missed that deadline by more than three years, so unless he qualifies for substantial tolling, the petition is untimely.

B.  The Limitations Period Was Equitably Tolled For Two Circumstances

The one-year limitations period can be equitably tolled because § 2244(d) is not jurisdictional. *Holland v. Florida*, 560 U.S. 631, 645 (2010). "'[A] litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.'" *Id.* at 655 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). The petitioner bears the burden of showing that equitable tolling should apply to him. *See Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002).

1.  Equitable Tolling For Attorney Abandonment

Mere negligence by an attorney does not amount to an extraordinary circumstance warranting equitable tolling of the limitations period. *See Holland*, 560 U.S. at 652 ("a 'garden variety claim' of attorney negligence" does not warrant equitable tolling of habeas statute of limitations period). This is because a petitioner ordinarily is "bound by his attorney's negligence, because the attorney and the client have an agency relationship under which the principal is bound by the actions of the agent." *Towery v. Ryan*, 673 F.3d 933, 941 (9th Cir. 2012) (citing *Maples v.*

4

*Thomas*, 132 S. Ct. 912, 927 (2012) (using agency principles)). Thus, for example, an attorney's miscalculation of deadlines relating to the filing of a habeas petition by an attorney is considered negligence that is not an "extraordinary circumstance" warranting equitable tolling. *See Randle v. Crawford*, 604 F.3d 1047, 1057-58 (9th Cir. 2010) (trial counsel's failure to perfect a timely appeal, post-conviction counsel's incorrect advice as to filing deadline for federal petition and two-month delay in providing client files did not warrant equitable tolling). When, however, counsel's errors are greater than or different from a simple miscalculation of the deadline, extraordinary circumstances may be found.

Counsel's professional misconduct, including attorney abandonment, can "amount to egregious behavior and create an extraordinary circumstance that warrants equitable tolling." *Holland*, 560 U.S. at 651; *see id.* at 644, 651 (rejecting Eleventh Circuit's rule that petitioner must show lawyer misconduct *plus* bad faith, dishonesty, divided loyalty, mental impairment by lawyer to warrant equitable tolling); *see also Maples v. Thomas*, 132 S. Ct. 912, 922-27 (2012) (attorney abandonment can be "cause" that will excuse procedural default); *id.* at 918-20 and 928 (procedural default excused because petitioner's two lawyers left the big firm at which they were employed and took employment positions that disabled them from representing the petitioner, failed to tell the petitioner of that change of employment, failed to inform the court, and failed to get a new attorney for the petitioner – the combined effect of which was to leave the petitioner unaware that he had no attorney representing him).

The Ninth Circuit considered attorney abandonment arguments in two recent cases. The Ninth Circuit found attorney abandonment that supported equitable tolling in *Rudin v. Myles*, 766 F.3d 1161 (9th Cir. 2014), where the post-conviction appointed attorney showed up for hearings but eventually stopped communicating with his client and never filed the state post-conviction petition in the 511 days before he was substituted out of the case. *Id.* at 1167-68. However, the amount of equitable tolling to which the petitioner was entitled in *Rudin* was not long enough to make her federal habeas petition timely, as she had not filed her petition within a year after the attorney was substituted out of the case. *See id.* at 1168. In *Gibbs v. Legrand*, 767 F.3d 879, 882 (9th Cir. 2014), the Ninth Circuit found attorney abandonment where the attorney failed to inform the client that the

state's highest court had denied the appeal of his state post-conviction petition, despite the client's repeated inquiries about the status of his case. The Ninth Circuit also had found attorney misconduct significant enough to warrant equitable tolling in several earlier cases. For example, in *Spitsyn v. Moore*, 345 F.3d 796, 800-01 (9th Cir. 2003), "extraordinary circumstances" were found to exist based on a convergence of problems with the attorney: the attorney was hired to prepare federal petition nearly a full year before the deadline yet completely failed to file a federal petition; the attorney was unresponsive to inquiries from petitioner and his mother's numerous telephonic and written inquiries; *and* the attorney retained petitioner's files for more than two months beyond expiration of the limitations period even though client had asked for their return. The Ninth Circuit found that the attorney's "conduct was so deficient as to distinguish it from the merely negligent performance of counsel in *Frye* and *Miranda*," where the attorneys had miscalculated the deadlines. *Spitsyn*, 345 F.3d at 801; *see, e.g., Porter v. Ollison*, 620 F.3d 952, 956-61 (9th Cir. 2010) (attorney's misconduct and eventual resignation after facing disciplinary proceedings for running habeas corpus "writ mill" appear to be extraordinary circumstances; remanding on issue of whether petitioner is or is not entitled to equitable tolling because of lack of diligence or because attorney's egregious conduct did not prevent petitioner from filing timely petition); *Doe v. Busby*, 661 F.3d 1001, 1012 (9th Cir. 2011) (extraordinary circumstances existed where the attorney who had been hired more than a year before the deadline failed to file a federal petition for four years, then quit without having filed a petition and took months to return client files).

      This Court has no hesitation in finding attorney abandonment on the record presented in this case. Mr. and Mrs. Jacquett hired attorney Prahl to prepare at least a state habeas petition and paid his fee in February 2010. After a couple of months, they began making repeated inquiries as to the status of the attorney's efforts. The attorney never responded to their inquiries. Finally, 17 months after hiring the attorney, and apparently after more than a year of no response from the attorney and no petition being filed, the Jacquetts gave up and fired the attorney. The attorney then returned the files and refunded the fees paid. The full refund suggests that even the attorney recognized he did not do anything of value for the clients. This attorney conduct goes well beyond garden variety negligence and amounts to attorney abandonment.

Respondent argues that Mr. Jacquett should not receive equitable tolling because "he could have terminated his attorney and filed a federal petition pro se at anytime (sic)." Docket # 10 at 1. True, but the same can be said of any attorney-client relationship. If the ability of a client to terminate his attorney was dispositive, there would not be the body of cases discussed above distinguishing the gradations of attorney misconduct that do and do not support equitable tolling. A client's ability to terminate the attorney-client relationship does not mean that the attorney's misconduct cannot be an extraordinary circumstance supporting equitable tolling. Insofar as Respondent suggests that Mr. Jacquett's failure to terminate the unresponsive attorney sooner shows a lack of diligence, the Court disagrees with that proposition also. At some point in time a client reasonably should realize his attorney has abandoned him, but Mr. Jacquett's failure to realize until about 14 months after the attorney stopped responding to inquiries that he had been abandoned by that attorney does not demonstrate a lack of diligence. Mr. Jacquett's evidence is that he turned the files over to the attorney in March 2010, and 60 days later – which would have been May 2010 – sent his first letter of inquiry, and fired the attorney in July 2011. Mr. and Mrs. Jacquett repeatedly tried to contact the attorney and failed to cause him to respond to them. Their efforts demonstrate the necessary diligence, as the diligence necessary is "reasonable diligence," and not "maximum feasible diligence." *Holland*, 560 U.S. at 653 (internal citation and quotation marks omitted).

The limitations period will be tolled from February 12, 2010 (i.e., the date on which the attorney was paid his fee to start work) until August 9, 2011 (i.e., the date on which the attorney returned the files to Mrs. Jacquett) due to the attorney abandonment. The limitations period will not be tolled for the time during which Mrs. Jacquett held the files before delivering them to her husband because that cannot be attributed to the attorney. Nor will the limitations period be tolled for the time before the attorney was paid, as there is no evidence that he agreed to begin any work until paid. The date of payment might even be a generous starting date for the tolling, as the client did not deliver the client file to the attorney until a month later, on March 12, 2010.

2. <u>Equitable Tolling For Mr. Jacquett's Separation From His Legal Files In Prison</u>

Equitable tolling is appropriate for the time during which prison officials have separated a prisoner from his legal materials. *See Espinoza-Matthews v. California*, 432 F.3d 1021, 1027-28

(9th Cir. 2005) (denial of access to prisoner's legal materials during 11 months he was in administrative segregation supported equitable tolling for prisoner who attempted to obtain those materials to prepare petition); *but cf. Ford v. Pliler*, 590 F.3d 782, 790 (9th Cir. 2009) (affirming district court's determination that petitioner was not entitled to equitable tolling based on lack of access to his legal files from counsel because the record showed petitioner was aware of the factual basis for his claims without the files).

Here, the limitations period will be equitably tolled from November 21, 2011 (i.e., the date on which Mr. Jacquett became separated from his legal files when he was put in administrative segregation) until May 1, 2012 (i.e., the date on which he apparently received those files back from prison officials). The necessary diligence is shown, as Mrs. Jacquett repeatedly contacted prison officials to attempt to find those files that apparently had been lost.

C.  Some Statutory Tolling Applies

The one-year limitations period is tolled for the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). A state habeas petition is considered pending not only for the time the case is open on the docket of some court, but also for the time period between state habeas petitions if the petitioner files the later state habeas petition at a higher level court and does so "within what California would consider a 'reasonable time.'" *Evans v. Chavis*, 546 U.S. 189, 197-98 (2006); *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *see, e.g., Stewart v. Cate*, 757 F.3d 929, 935-36 (9th Cir. 2014) (delay of 100 days with no showing of good cause is an unreasonable delay); *Banjo v. Ayers*, 614 F.3d 964, 970 (9th Cir. 2010) (delay of 146 days between successive petitions is not reasonable, so later petition not "timely filed"); *Chaffer v. Prosper*, 592 F.3d 1046, 1048 (9th Cir. 2010) (unexplained, and hence unjustified, delays of 115 and 101 days between California habeas petitions were not reasonable); *Waldrip v. Hall*, 548 F.3d 729, 735-36 (9th Cir. 2008) (delay of at least eight months not "reasonable" and thus not subject to tolling).

Mr. Jacquett is entitled to statutory tolling for the first four state habeas petitions. Unfortunately for him, he is *not* entitled to tolling for the 142-day period between the denial of State Petition # 4 and the actual filing of State Petition # 5 because State Petition # 5 was filed in the same

1  level court (i.e., both were filed in the California Supreme Court) and State Petition # 5 was not filed
2  within what California would consider a reasonable time. *See Stewart*, 757 F.3d at 935-36
3  (unexplained delay of 100 days was unreasonable delay).

4  Applying these principles to Mr. Jacquett's facts leads to the conclusion that his federal
5  petition is untimely. Before he filed State Petition # 1, 258 days of the untolled time in the
6  limitations period had passed (i.e., the 112 days before the attorney was hired, plus the 104 days
7  from the return of the files from the attorney until the date on which Mr. Jacquett became separated
8  from the files due to his placement in ad-seg, plus the 42 days from the return of the files to him
9  from prison officials until the date he filed State Petition # 1). Mr. Jacquett receives equitable
10 tolling for the time from the filing of State Petition # 1 on June 12, 2012 until the denial of State
11 Petition # 4 on March 3, 2013. He does not receive tolling for the 142 days between the denial of
12 State Petition # 4 and the filing of State Petition # 5 because they were filed in the same level court
13 and because State Petition # 5 was not filed within a reasonable time. Mr. Jacquett had only 107
14 days remaining in his one-year limitations period when it resumed on March 3, 2013. His deadline
15 to get to federal court expired on June 19, 2013, about a month before he filed State Petition # 5 in
16 state court. State Petition # 5 did not toll the limitations period that had already expired. *See*
17 *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003). Even if he was entitled to tolling for the
18 time during which State Petition # 5 was actually on file in the California Supreme Court, Mr.
19 Jacquett still would have missed the deadline to file his federal petition, albeit by 84 days less.

20 Mr. Jacquett did not assert any other basis for tolling. Mr. Jacquett's federal petition for writ
21 of habeas corpus filed on January 16, 2014 was filed almost six months after the expiration of the
22 statute of limitations period. The petition must be dismissed as untimely.

23 D.   No Certificate of Appealability

24 A certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). This is not a case in
25 which "jurists of reason would find it debatable whether the petition states a valid claim of the denial
26 of a constitutional right and that jurists of reason would find it debatable whether the district court
27 was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

28

### IV. CONCLUSION

Respondent's motion to dismiss is GRANTED. (Docket # 7.) This action is dismissed because the petition for writ of habeas corpus was not filed before the expiration of the habeas statute of limitations period.

IT IS SO ORDERED.

Dated: November 12, 2014

_____
EDWARD M. CHEN
United States District Judge

10